**Charles J. WILLIAMS,**
**Plaintiff–Appellant,**

v.

**CITY OF INDIANAPOLIS DEPART-**
**MENT OF PUBLIC WORKS,**
**Defendant–Appellee.**

No. 73A01–8912–CV–517.

Court of Appeals of Indiana,
First District.

Aug. 21, 1990.

David A. Clase, David A. Clase and Associates, Indianapolis, for plaintiff-appellant.

Thomas M. Carusillo, M. Sue Michael, City–County Legal Div., Indianapolis, for defendant-appellee.

BAKER, Judge.

Plaintiff-appellant Charles Williams brought this class action against defendant-appellee City of Indianapolis Department of Public Works (the City) to challenge the procedures by which the City places liens for sewer user fees on real property held by absentee landlords. We affirm.

Williams raises several issues for our review, which we restate as follows. First, whether placing a lien on real property is a deprivation of property requiring adherence to constitutional norms of procedural due process. Second, whether the City is required to terminate water service to delinquent users. Third, whether the City provided adequate statutory notice of liens to the plaintiff class. Fourth, whether the City complied with the statutory mandate to forward final bills to sewer users after a change of address.

### Facts

In January 1988, the City sent notice to absentee landlords which stated that collection proceedings would be commenced for delinquent sewer user fees. After a series of meetings between the Landlord's Association and City representatives, it was determined that collection proceedings would be limited to closed accounts of more than $25.00.

In April 1988, the City again sent notice to the landlords, stating that a lien would be placed against their property if delinquent accounts were not paid. Williams filed this action on June 28, 1988. On July 1, 1988, the City placed liens on those properties whose delinquent accounts were not paid.

In January of 1989, the City sent post-lien notice to the landlords, and in March of 1989, the City certified the liens to the Marion County Auditor for inclusion on the landlords' November 1989 property tax bills.

## I. CONSTITUTIONALITY OF LIEN PROCEDURES

■ IND.CODE 36–9–23–32 and IND. CODE 36–9–25–11 prescribe that sewer user fees constitute a lien against the realty on which the fees are assessed. Williams argues that the statutory lien process is a deprivation of property requiring due process notice and an opportunity to be heard under the Fourteenth Amendment to the United States Constitution. An act of the General Assembly bears a strong presumption of constitutionality, *Dague v. Piper Aircraft Corp.* (1981), 275 Ind. 520, 418 N.E.2d 207, and Williams has failed to overcome that presumption here.

■ It is well settled that a municipality's lien against property for utility fees is not a deprivation or taking of property and that, therefore, the requirements of due process are inapplicable. *Dunbar v. City of New York* (1920), 251 U.S. 516, 40 S.Ct. 250, 64 L.Ed. 384. *Cook v. City of Enterprise* (1983), 233 Kan. 1039, 666 P.2d 1197. *See also Spielman–Fond, Inc. v. Hanson's Inc.* (D.Ariz.1973), 379 F.Supp. 997, *aff'd.* (1974), 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208. In *Spielman–Fond,* the court held that the filing of a mechanic's lien is not the taking of a significant property interest requiring adherence to due process requirements. In reaching its conclusion, the court stated:

[A] lien is filed against the property and clouds title. It cannot be denied that the effect of such lien may make it difficult to alienate the property. If the plaintiffs can find a willing buyer, however, there is nothing in the statutes or the liens which prohibits the consummation of the transaction.

*Id.* at 999. Similarly, the plaintiffs here retain the ownership of their property and their ability to alienate it. The liens do not amount to a taking.

■■■ Under IND.CODE 36–9–23–33(h)[1], delinquent fees which have been placed as liens against property shall be collected in the same manner as delinquent property taxes. This means that if the fees are not paid, the property is subject to tax sale under IND.CODE 6–1.1–24. Williams contends this procedure is also violative of due process. His position is without merit for three reasons.

First, nothing in the record reveals that any of the plaintiffs' properties have been sold, so they do not have a cause of action at the present time. Second, Williams did not present this argument to the trial court. He may not present it for the first time on appeal. *City of Evansville v. Old State Utility* (1990), Ind.App., 550 N.E.2d 1339. Third, before a tax sale is held, IND.CODE 6–1.1–24–4 requires notice of an impending sale to the delinquent owner and IND.CODE 6–1.1–24–4.7 grants an opportunity for hearing, thus providing compliance with due process standards.[2]

## II. SERVICE TERMINATION

Williams argues the City is mandated by IND.CODE 36–9–25–11 and IND.CODE 36–9–25–11.5 to terminate sewer and water service to delinquent users, thereby reducing the landlords' liability, regardless of any other remedies pursued. We disagree.

■■■ IND.CODE 36–9–25–11(i)[3] provides that in addition to other penalties, "a delinquent user may not discharge water into the public sewers and *may* have the property disconnected from the public sewers." (Emphasis added). Normally, the word "may" in a statute implies a permissive condition and a grant of discretion. *City of Tell City v. Noble* (1986), Ind.App., 489 N.E.2d 958, *trans. denied.* Williams has failed to offer any persuasive argument to justify a departure from the usual rule of construction, and we hold that whether to terminate sewer service under the authority of Section 11(i) is a question within the City's discretion.

IND.CODE 36–9–25–11.5 provides:

(a) As an alternative to the penalties provided in section 11 of this chapter, the board may require that the water utility providing water service to a delinquent user discontinue service until payment of all overdue user fees, together with any penalties provided in this section, are received by the municipality.

. . . .

(c) If the user fails to pay the delinquent amount or otherwise resolve the charges as specified in subsection (a), the board or its designee shall give written notice to the utility serving the user to discontinue water service. . . .

Section 11.5(a), like Section 11(i), contains the permissive word "may". Moreover, Section 11.5 as a whole provides an alternative to the remedies available to the City under Section 11, and its subsection (c), while containing the mandatory word "shall", applies only if the sanitation board decides to pursue the termination remedy under subsection (a). It is apparent, then, that the decision to terminate water service, like the decision to terminate sewer service, is discretionary.[4]

---

1. Redesignated as IND.CODE 36–9–23–33(i) by 1990 Ind. Acts Pub.L. 45–1990, § 8.

2. IND.CODE 6–1.1–24–4.7 was not in effect at the outset of this litigation. It is in effect currently, however, and will apply in any tax sale of Williams's or the other plaintiffs' property.

3. Formerly IND.CODE 36–9–25–11(g).

4. 1989 Ind. Acts Pub.L. 64–1989 § 4 made a clerical amendment to IND.CODE 36–9–25–11.5 which has no bearing on this litigation.

## III. STATUTORY NOTICE PROVISIONS

Williams argues next that the notice sent by the City to the landlords was deficient for want of statutory compliance. He first claims the City failed to comply with the terms of IND.CODE 36–9–23–32(c), which provides:

> A lien attaches against real property occupied by someone other than the owner only if the utility notified the owner within twenty (20) days after the time the utility fees became sixty (60) days delinquent. However, the utility is required to give notice to the owner only if the owner has given the general office of the utility written notice of the address to which his notice is to be sent.

We note here that Williams is appealing a negative judgment, which we will reverse only if contrary to law. *Beneficial Mortgage Co. v. Powers* (1990), Ind. App., 550 N.E.2d 793. We will reverse a negative judgment as contrary to law only if the evidence is without conflict, and all reasonable inferences to be drawn from the evidence lead to but one conclusion and the trial court has reached a different conclusion. *Id.* We will affirm the specific findings and conclusions of the trial court unless they are clearly erroneous, and we will neither reweigh the evidence nor judge the credibility of witnesses. *Id.*

The trial court in this case was presented with conflicting evidence as to whether the notice requested by some of the plaintiffs under IND.CODE 36–9–23–32(c) was sent in a timely fashion. Williams's argument here is merely a request that we reweigh this conflicting evidence. We decline the invitation.[5]

Williams also argues the City did not send the post-lien notice required by IND. CODE 36–9–23–33(c). The trial court specifically found that the notice sent by the City in January 1989 was a post-lien notice.

*Record* at 251. Moreover, any allegation of lack of actual notice of the filing of the liens is refuted by the fact that Williams filed a motion for preliminary injunction to block certification of the liens for inclusion on the plaintiffs' tax bills from the Department of Public Works to the County Auditor. *Record* at 254. On the whole, we are satisfied the trial court's findings and conclusions were not clearly erroneous, and we affirm the conclusion that Williams and the other plaintiffs received adequate post-lien notice.

## IV. FINAL BILLS

IND.CODE 36–9–23–12.5, effective April 16, 1985, mandates: "Whenever a sewer user moves to a different residence from the one being supplied sewer service, but within the same municipality, the sewer utility shall forward the user's final sewer bill to the new address." Williams contends the City failed to comply. The only evidence in support of Williams's argument, however, concerned a user who changed addresses in 1982, before the statute was enacted. *Record* at 657–58. Williams's argument is wholly without merit: the City was obviously under no duty to comply with a statute before its enactment.[6]

## CONCLUSION

The trial court is in all things affirmed.

RATLIFF, C.J., and ROBERTSON, J., concur.

---

5. Not only does the evidence support the trial court's conclusion that the City sent the requested notice in a timely fashion, it reveals the notices sent by the City in January and April of 1988 were sent to all the absentee landlords, regardless of whether they requested notice.

6. Williams also argues the City failed to comply because it did not forward account balances from one property to another. The statute does not require the City to forward account balances, only final bills.