Mary Sue **LEWIS**, Appellant–Plaintiff,

v.

**BOARD OF SCHOOL TRUSTEES OF the CHARLES A. BEARD MEMORIAL SCHOOL CORPORATION**, Appellee–Defendant.

No. 33A01–9505–CV–135.

Court of Appeals of Indiana.

Nov. 8, 1995.

Rehearing Denied Jan. 9, 1996.

Richard J. Darko, Lowe Gray Steele & Hoffman, Indianapolis, for Appellant.

Charles R. Rubright, George T. Patton, Jr., Bose McKinney & Evans, Indianapolis, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Mary Sue Lewis appeals from the trial court's denial in part of her motion for summary judgment. The Board of Trustees of the Charles A. Beard Memorial School Corporation (the "Board") decided not to renew Lewis' teaching contract at the end of the 1992–93 school year. Lewis filed a complaint against the Board seeking reinstatement and back pay on the grounds that the Board violated Indiana Code § 20–6.1–4–14(c) because the Board did not conduct an appropriate conference in the manner provided by the statute. Both parties moved for summary judgment, and following a hearing, the trial court entered its findings of fact, conclusions of law and summary judgment granting Lewis' motion in part and denying her motion in part. The court concluded, as a matter of law, that Lewis was entitled to a meaningful conference and remanded the case to the Board for that purpose. However, the court

further determined that Lewis was not entitled to reinstatement with back pay. Lewis appeals the trial court's denial of her request for reinstatement, back pay or other relief.

We affirm.

## ISSUE

The sole issue presented for our review is whether the trial court erred when it concluded, as a matter of law, that Lewis was not entitled to reinstatement and back pay.

## FACTS

On several occasions from December 1991 to March 1993, Lewis, a non-permanent music teacher at Knightstown High School, received written evaluations of her performance from her principal. Throughout the course of Lewis' employment, her principal had expressed his increasing concern with the quality of her work. By letter dated April 16, 1993, the superintendent notified Lewis that the Board would consider the nonrenewal of her contract at its next meeting. Lewis attended and spoke at the meeting, other individuals spoke on her behalf, and a petition in support of her continued employment was presented to the Board. After the information was considered, the Board voted not to renew Lewis' contract. On April 22, 1993, the Board officially notified Lewis that it had voted not to renew her contract as a nonpermanent teacher. Thereafter, Lewis requested a public conference with the Board regarding the nonrenewal of her contract and a conference was held on May 26, 1993. During the conference, the Board failed to provide Lewis with full and complete information supporting its reasons for nonrenewal and did not permit Lewis to provide information demonstrating why her contract should be renewed. At its next meeting, the Board voted to affirm its decision not to renew Lewis' teaching contract.

## DISCUSSION AND DECISION

### Standard of Review

■ In reviewing a motion for summary judgment, this court applies the same standard as the trial court. *Walling v. Appel Service Co.* (1994), Ind.App., 641 N.E.2d 647,

648–49. Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The party appealing from the grant of summary judgment has the burden of persuading the court on appeal that the grant of summary judgment was erroneous. *Jordan v. Deery* (1993), Ind., 609 N.E.2d 1104, 1107. We resolve any doubt as to fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *Terre Haute First Nat. Bank v. Pacific Employers Ins. Co.* (1993), Ind.App., 634 N.E.2d 1336, 1337.

### Right to a Conference

■ Nonpermanent teachers are not accorded the same status as permanent teachers and, thus, the procedures for the termination of nonpermanent teachers are different than those for tenured teachers. *Aplin v. Porter School Township of Porter County* (1980), Ind.App., 413 N.E.2d 999, 1003, *trans. denied.* Prior to 1978, nonpermanent teachers were not entitled to a hearing to review a School Board decision to terminate their employment. However, in 1978, subsection (c) was added to Indiana Code § 20–6.1–4–14 which accords nonpermanent teachers the right to a conference following the nonrenewal of their contract. In addition to providing the right to a conference, subsection (c) further provided:

At any conference, the governing body, the superintendent or the superintendent's designee *may* provide any information supporting noncontinuance, and the teacher *may* provide any information demonstrating that noncontinuance of the contract is improper.

(emphases added). In *Tishey v. Board of Trustees of North Newton School Corp.* (1991), Ind.App., 575 N.E.2d 1018, *trans. denied,* a nonpermanent teacher brought suit and claimed that she was denied her statutory right to a "conference" due to the School Board's failure to elaborate on its statement of reasons for nonrenewal of her contract or to present any further information for its decision of nonrenewal. *Id.* at 1020. In

construing subsection (c), we determined that the use of the word "may" connoted a permissive condition and a legislative grant of discretion. *Id.* We held that subsection (c) did not place an affirmative obligation upon the Board to exchange information at the conference. *Id.*

■ Then, effective July 1, 1992, the Legislature amended subsection (c), which now reads in pertinent part:

> At any conference, the governing body, the superintendent, or the superintendent's designee *shall* provide *full and complete* information supporting *the reasons for* noncontinuance and the teacher *shall* provide any information demonstrating that noncontinuance of the contract is improper.

IND.CODE § 20–6.1–4–14(c) (emphases added). The word "shall" in a statute is presumed to be used in its imperative and mandatory sense. *State ex rel. Land v. Board of Trustees of Springs Valley School Corp.* (1982), Ind.App., 430 N.E.2d 791, 794, *trans. denied.* Indiana law requires an administrative body to adopt and follow the statutorily prescribed methods of exercising its powers and duties. *Myers v. Greater Clark County School Corp.* (1984), Ind.App., 464 N.E.2d 1323, 1330. Substantial compliance with a statutory mandate is sufficient if the act of compliance accomplishes the essential purpose of the statute. *Moran v. Board of School Trustees* (1986), Ind.App., 501 N.E.2d 472, 475, *trans. denied.*

■ In the instant case, the trial court concluded, and we agree, that the essential purpose of subsection (c) is to permit the teacher to rebut information supporting the reasons for noncontinuance and, therefore, it is critical for the teacher to know what information has been provided to the Board and what information the Board relied upon when it decided to terminate the contract. The parties here do not dispute that the trial court correctly determined, as a matter of law, that the Board failed to substantially comply with the mandate of subsection (c) because it failed to provide information supporting the reasons for termination and did not permit Lewis to provide information demonstrating why termination was improper. The parties disagree, however, as to the legal effect of the Board's noncompliance with the conference requirement.

### Validity of Termination

■ Lewis contends that the Board's compliance with subsection (c) is a condition precedent to the exercise of the Board's right to terminate her contract and, thus, that the Board's termination of her contract was invalid. She argues that the proper remedy for the Board's failure to comply with subsection (c) is reinstatement with back pay. We cannot agree.

■ School Boards must strictly adhere to statutory conditions precedent to the discharge of an employee. *Moran,* 501 N.E.2d at 474 n. 3. When construing a statute, we are bound to apply the plain, ordinary and usual meaning of the words and phrases of the statute unless a contrary purpose is clearly shown by the statute itself. *Dept. of Public Welfare, State of Ind. v. Couch* (1992), Ind., 605 N.E.2d 165, 167. Further, the court on appeal must examine the grammatical structure of the clause or sentence at issue. *Spangler v. State* (1993), Ind., 607 N.E.2d 720, 723.

In construing the statutory language of subsection (c) at issue here, the trial court relied on our decision in *Moran,* in which this court was asked to construe a different subsection of Indiana Code § 20–6.1–4–14. In *Moran,* a nonpermanent teacher contended that the Board's decision to terminate her contract violated subsection (b)(2) of Indiana Code § 20–6.1–4–14. *Moran,* 501 N.E.2d at 474. Subsection (b)(2) provided in part that "[t]he principal . . . shall provide the teacher with an annual written evaluation." The plaintiff in *Moran* asserted that the required evaluation of the teacher's performance from the principal was a statutory condition precedent to the Board's exercise of its power to terminate a nonpermanent teacher's contract and, thus, the Board's decision of nonrenewal was ineffective and she was entitled to reinstatement. *Id.*

We determined in *Moran* that compliance with subsection (b)(2) was not a condition precedent to a valid exercise of the Board's

power to terminate a contract. *Id.* at 475. Subsection (b) began with the language that "[a] teacher who is refused continuation of the contract ... has the following rights." Applying the plain meaning of the language, we concluded that subsection (b)(2) became operative only *after* the nonpermanent teacher had been refused continuation of the contract. *Id.* Accordingly, we held that subsection (b)(2) of Indiana Code § 20–6.1–4–14 could not and did not impact on the nonrenewal procedure and was not a condition precedent to a valid termination of a nonpermanent teacher's contract. *Id.* Thus, the Board's failure alone to comply with subsection (b)(2) did not entitle Moran to her requested relief of reinstatement. *Id.*

In 1989, subsequent to our decision in *Moran,* the Legislature amended the language of Indiana Code § 20–6.1–4–14(b) which now begins *"[b]efore* a teacher is refused continuation of the contract ... the teacher has the following rights, *which shall be strictly construed."* (emphases added). Although subsection (b) is not at issue here, the addition of the word "before" indicates the Legislature's intent that the Board's compliance with subsections (b)(1) and (b)(2) are now conditions precedent to a valid nonrenewal of a contract. *See Tishey,* 575 N.E.2d 1018, 1020.

In the present case, however, there is no similar indication that the Legislature intended that subsection (c) be a condition precedent to a valid termination. Indeed, in its 1992 amendments to subsection (c), the Legislature merely rendered mandatory the requirements that the Board provide full and complete information supporting its decision not to renew a contract and that the teacher be permitted to provide any information demonstrating why the Board's nonrenewal was improper. The Legislature did not amend subsection (c) to provide that a nonpermanent teacher's contract continues unless a conference is held or that a conference must occur *before* a teacher is refused continuation. We find nothing in the statute to indicate that two full hearings are required before a termination is effective. We will not second-guess the Legislature's policy decision to provide non-permanent teachers with

a post-termination conference as a rehearing of the Board's prior decision to terminate a contract. Like the pre–1989 version of subsection (b)(2), consideration of the plain language and structure of subsection (c) shows that it becomes operative only after the nonpermanent teacher's contract has been terminated. Thus, we conclude that the Board's failure to substantially comply with subsection (c) does not in itself entitle Lewis to her requested remedy of reinstatement with back pay. *See Moran,* 501 N.E.2d at 475.

Although we have determined that Lewis is not entitled to reinstatement with back pay, we must still determine whether she is entitled to other relief. As we have noted, the trial court decided as a matter of law that the Board failed to substantially comply with subsection (c) and ordered the Board to hold a proper conference. Still, Lewis contends she is entitled to damages for the Board's noncompliance. We hold that, because her termination was effective prior to the conference, Lewis was not damaged by the Board's failure to comply with the statute. Lewis was only deprived of her statutory right to the exchange of information at a post-termination conference before the Board. The trial court properly remanded this cause to the Board to afford Lewis a proper conference as mandated by subsection (c).

Affirmed.

BAKER and FRIEDLANDER, JJ., concur.